HUNTER *v.* SCOTT.

Opinion delivered February 9, 1925.

1. EXCHANGE OF PROPERTY—FRAUD—NOTICE.—In a suit to cancel as fraudulent deeds and notes executed by plantiff in an exchange of lands with defendant vendee, a finding that two parties who purchased plaintiff's notes acquired them with knowledge of the fraudulent representations which induced the trade *held* not clearly against the preponderance of evidence.

2. EXCHANGE OF PROPERTY—RESCISSION—LACHES.—Plaintiff was not guilty of laches in suing to rescind an exchange of lands for fraud where she offered to rescind immediately upon discovery of the fraud.

Appeal from Sevier Chancery Court; *C. E. Johnson,* Chancellor; affirmed.

*Henry S. Julian* and *Roland Hughes,* for appellant.

*Abe Collins,* for appellee.

SMITH, J. This suit was brought by appellee to cancel two deeds which she had executed conveying lands owned by her in Sevier County, Arkansas, and to cancel certain notes which she had executed in connection with the sale of these lands. The transaction was in form an exchange of the plaintiff's Arkansas lands for lots in Kansas City, Missouri, on which were located a residence and an apartment house.

The court below made an extended finding of fact, from which the issues in the case are made to fully appear. We copy from this finding the following recitals.

On November 1, 1921, plaintiff executed two warranty deeds to F. M. Hunter. By one she conveyed 1,887.20 acres of her land; by the other she conveyed

823.06 acres of land, the last including the cleared and cultivated land. The consideration for said deeds was an exchange of properties.

Hunter conveyed to plaintiff, Mrs. Scott, the Kansas City lots. The deed from Hunter was made subject to a mortgage for $10,000 on the dwelling, and a mortgage for $23,000 on the apartment, and a $5,000 mortgage covering both buildings.

To indemnify Mrs. Scott from the lien of these mortgages, Hunter executed to her the following notes: One for $4,500, due November 1, 1922; one for $1,900, due November 1, 1923; and six notes, for $5,000 each, due November 1, 1926, all being secured by a vendor's lien reserved in the deed to the larger body of land from Mrs. Scott to Hunter.

A further consideration for the exchange of properties was an agreement on the part of Mrs. Scott to deliver to Hunter a stock of merchandise and certain other personal property. No demand for the delivery of the personal property was ever made, and it was in the possession of Mrs. Scott at the time of the rendition of the decree.

Mrs. Scott indorsed to Benjamin Davis, as agent for Hunter, the $4,500 note, with the understanding that Davis would discharge three notes, for $1,500 each, which were a part of the indebtedness secured by the mortgages on the Kansas City property. Davis claimed to have transferred the note to G. W. Harmon for $1,500, and he converted the proceeds thereof to his own use and did not pay any one, or any part of any one, of the $1,500 notes which he had agreed to pay with the proceeds of the $4,500 note. Harmon claimed to be an innocent purchaser of the $4,500 note, but the court found that he was not.

Plaintiff indorsed the $1,900 note to Davis to cover his commission for making the deal, and Davis indorsed this note to Pearson, who claimed to be an innocent purchaser thereof, and the cause was continued as to this note.

Plaintiff owned the remaining notes, aggregating $30,000.

The court found the fact to be that the execution of the two deeds by plaintiff had been procured by the concerted fraudulent acts and misrepresentations of F. M. Hunter, Benjamin Davis, Isaac F. Tyson, J. M. McPherson, G. W. Harmon, and W. L. Perkins.

The false and fraudulent representations were that the parties named had represented to plaintiff and her son, who acted as her agent, that the residence and apartment were rented for $910 per month, when, in fact, they were earning, less running expenses, only about half that amount. It was represented that $1,600 had been paid on the $5,000 mortgage and that the balance was payable at the rate of $500 per month, and could easily be paid out of the rents; and that nothing would be due on the $23,000 mortgage or on the $10,000 mortgage for three years; when, in truth, there was $4,304 due on the $5,000 mortgage, instead of $3,400, as represented, and a suit was pending to foreclose the $10,000 and the $23,000 mortgages.

The 800-acre farm was conveyed to Hunter by a deed which gave him an unincumbered title thereto, and he executed a mortgage on this land to Isaac F. Tyson to secure a note for $16,800, which was delivered to Isaac F. Tyson in payment of the purchase price for the Kansas City property, Tyson being the owner of the equity of redemption therein. The court found that this note and mortgage were, in fact, forged, and that Hunter had never executed either.

The court further found that the mortgages on the Kansas City property were about to be foreclosed, and that it was a part of the conspiracy for this $16,800 note to be executed to Isaac F. Tyson, and that Isaac F. Tyson had indorsed this note to his father, John Tyson, in apparent payment of past due indebtedness due by Isaac F. Tyson to his father, who claimed to be an innocent purchaser of the note, for value, and before maturity; but the court found that John Tyson was not an innocent purchaser.

Upon these findings the court ordered that the $16,800 note, together with the mortgage securing it, the two deeds from plaintiff to Hunter, and all of the notes purporting to have been signed by Hunter and which were secured by the vendor's lien, except the note for $1,900, be canceled, and that the plaintiff's title to all the land be quieted against all the defendants, and that the case be continued as to J. R. Pearson.

It was further ordered that the decree canceling the notes secured by the vendor's lien should not apply to the $4,500 note of that series owned by G. W. Harmon in so far as defendant Hunter was concerned, but only in so far as it appeared to be a lien against the land.

From this decree the Tysons only have appealed.

We will not set out the testimony showing the sordid conduct of the parties upon which the court made the finding of fact set out above.

According to the defendants, Mrs. Scott was represented by her son and by W. L. Perkins, a real estate agent, whose home was in Sevier County, and that these agents dealt with the defendant Davis, who was the agent of Hunter, and Davis, as the agent of Hunter, dealt with the agent of Isaac F. Tyson, and with Tyson himself. It is pointed out that the testimony does not show that Tyson himself, or his agent, dealt directly with Mrs. Scott or her son. It is also insisted that the testimony shows that it was Davis, agent for Hunter, who dealt with Mrs. Scott and her son, on the one hand, and with Tyson and his agent, on the other, and that, if any fraud was practiced by Davis, they were not parties thereto, nor were they the beneficiaries thereof, and it is especially insisted that there was no testimony tending to show that John Tyson was not an innocent purchaser of the note for $16,800 which he acquired from his son; and it is also insisted that the offer to rescind was not made until after the Kansas City property had been sold under a decree of foreclosure.

There appears to be no question that the exchange of properties was induced by false and fraudulent rep-

resentations made to Mrs. Scott's son, who was her agent, and the only real questions in the case appear to be whether Isaac F. Tyson was a party to the fraud, and whether his father was an innocent purchaser of the $16,800 note.

The undisputed testimony shows that Hunter, who ostensibly bought appellee's farms and Tyson's lots, was a figurehead. He was a day laborer on the farm of McPherson, who was one of the real estate agents who put over the deal. The court found that Hunter's signature to the $16,800 note and the mortgage securing it was a forgery, this finding being based on the testimony given by him when his deposition was first taken, that he knew nothing about the transaction and had not executed either instrument. In a deposition taken later he admitted signing both the note and the mortgage. We think it is not essential to find, in order to sustain the decree of the court below, that these instruments were in fact forged. The transaction was fraudulent, even though it be conceded that Hunter had signed both instruments.

We are of the opinion that the finding of the court below that Isaac F. Tyson knew what the fraudulent representations were which induced the trade is not clearly against the preponderance of the evidence. Henderson, one of the real estate agents who participated in the deal, testified that Tyson furnished him the information upon which he based the statements made to appellee's son and agent as to the rental value of the property.

We are also of the opinion that the finding of the court that John Tyson was not an innocent purchaser is not clearly against the preponderance of the evidence. The indebtedness due from Isaac F. Tyson to his father was past due; the amount involved was large; the relationship was that of father and son; and the fair inference is that the father would have made some inquiry about the transaction whereby his son had acquired this $16,800 note.

We conclude also that appellee acted with reasonable and sufficient promptness in offer to rescind the sales. It

is true that the Kansas City property was sold under a decree of foreclosure, and this may have been done before the offer to rescind was made. But the suit to foreclose the mortgages on the Kansas City property was pending when the deal was made, and the concealment of this fact, or, rather, the statement in regard to the maturity of this indebtedness, was one of the false representations which induced the contract, it having been represented that the part of the indebtedness which could not be discharged with the monthly rentals did not mature for three years. Appellant did offer to rescind immediately when she discovered the fraud practiced upon her, and we think the court committed no error in according her this right.

The decree of the court below is therefore affirmed.